HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAURIE BRIDGHAM-MORRISON and DEREK MORRISON, <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL GENERAL ASSURANCE COMPANY, a foreign insurer, <br><br> Defendant. | CASE NO. C15-927RAJ <br><br> ORDER |

## I.  INTRODUCTION

This matter comes before the Court on Plaintiffs Laurie Bridgham-Morrison and Derek Morrison (collectively, "Plaintiffs") Motion for Partial Summary Judgment (Dkt. # 56), Defendant National General Assurance Company's ("Defendant") Motion for Summary Judgment (Dkt. # 58), and Plaintiffs' two Motions for Voluntary Dismissal (Dkt. # 65 & 70). For the reasons set forth below, the Court **GRANTS** Plaintiffs' Motions for Voluntary Dismissal, **GRANTS** Defendant's Motion for Summary Judgment, and **DENIES** Plaintiffs' Motion for Partial Summary Judgment.

## II.  BACKGROUND

This contentious insurance dispute began on November 9, 2010,[1] when Mrs. Bridgham-Morrison was rear ended while driving a vehicle covered under Defendant's

---

[1] Plaintiffs' statement of facts asserts that the accident occurred on July 9, 2010 (*see* Dkt. # 56 at 2), but offers no evidentiary support and is contradicted by Plaintiffs' own allegations and evidence (*see* Am. Compl. ¶ 2.5; Dkt. # 57-8 (Traverso Decl.) Ex. H at 8).

ORDER – 1

Underinsured Motorist ("UIM") policy. *See* Dkt. # 1-1 ("Am. Compl.") ¶ 2.5. Mrs. Bridgham-Morrison made an insurance claim with Defendant the day of the accident. *See* Dkt. # 62 (Magalski Decl.) ¶ 3. After confirming coverage under the personal injury protection ("PIP") provisions of its policy, Defendant promptly began paying for Mrs. Bridgham-Morrison's medical treatment and household services, ultimately paying $10,000 in PIP benefits (the PIP policy limit), $4,920 in income loss benefits, and $3,600 to reimburse Plaintiffs for household services. *See id.* ¶ 4. Mrs. Bridgham-Morrison's initial attorney, M. Wayne Boyack,[2] contacted Defendant around this time as well, indicating that he was representing Mrs. Bridgham-Morrison. *See* Dkt. # 59-3 (Ferguson Decl.) Ex. 3.

For reasons not entirely clear to the Court, Mr. Boyack did not contact Defendant again until January 18, 2013, providing a police report, medical records and bills relating to the accident, and a letter from Mrs. Bridgham-Morrison's employer. *See* Dkt. # 63 (Wittels Decl.) ¶ 3, Ex. 1. Defendant assigned Jeffrey Wittels to handle Mrs. Bridgham-Morrison's claim. *Id.* ¶ 2. Mr. Boyack followed up on February 4, 2013, enclosing a copy of the demand letter he sent to the other driver's insurer, State Farm, as well as the supporting materials, which apparently included Mrs. Bridgham-Morrison's records pertaining to the collision, as well as a "Special Damage Statement" outlining her medical expenses and loss of earnings up to May 2012. *See* Dkt. # 57-1 (Traverso Decl.) Ex. A at 4-6. On July 22, 2013, Mr. Boyack followed up with a letter that stated he "now ha[d] the information needed to assess the total value of [Mrs. Bridgham-Morrison's] claim," and attached a doctor's letter and note. *See* Dkt. # 63 (Wittels Decl.) Ex. 2.

At that juncture, Mr. Wittels undertook his initial evaluation of Mrs. Bridgham-Morrison's UIM claim. In doing so, he accepted all of the claimed (and documented) medical expense and wage loss and requested additional information regarding her lost

---

[2] It is undisputed that Mr. Boyack did not represent Mr. Morrison. *See* Dkt. # 59-4 (Ferguson Decl.) Ex. 4 [Boyack Depo. Tr.] at 7:13-17, 10:6-13.

ORDER – 2

1  wages. *See id.* ¶ 6. Mr. Wittels then conducted his initial evaluation and estimated Mrs.
2  Bridgham-Morrison's noneconomic damages as ranging between $88,000 and $130,000,
3  resulting in a total value between $166,191.48 and $208,191.48. *See id.* ¶ 7, Ex. 3 at 22-
4  23. Mr. Wittels also requested additional documentation for Mrs. Bridgham-Morrison's
5  lost wages (*see id.* Ex. 3 at 21), which Mr. Boyack forwarded on October 10, 2013 (*see
6  id.* Ex. 4). Mr. Wittels subsequently requested $100,000 – the policy limits – in
7  settlement authority. *See* Dkt. # 57-2 (Traverso Decl.) Ex. B at 5.

8        It appears (though it is not entirely clear) that around October 24, 2013, Mr.
9  Wittels' supervisor instructed him to review his initial evaluation. *See id.* at 5; Dkt. # 63
10  (Wittels Decl.) ¶ 12. Whatever the case, Mr. Wittels reevaluated Mrs. Bridgham-
11  Morrison's claim and revised his estimated range for Mrs. Bridgham-Morrison's
12  noneconomic damages downward. Dkt. # 63 (Wittels Decl.) ¶ 14, Ex. 5 at 33-35. He
13  ultimately estimated that Mrs. Bridgham-Morrison's noneconomic damages ranged from
14  $53,000 to $75,000, with her total UIM claim's value ranging between $131,252 and
15  $153,252. *Id.* at 35. Consequently, Mr. Wittels requested $38,000 in settlement
16  authority, which he received. *See* Dkt. # 57-2 (Traverso Decl.) Ex. B at 2.

17        After receiving such authority, Mr. Wittels contacted Mr. Boyack and offered
18  $17,000 to settle Mrs. Bridgham-Morrison's UIM claim. *See id.* That was not accepted
19  and in November 2013, Mr. Wittels offered $20,000 and Mr. Boyack lowered Plaintiffs'
20  demand to $85,000. *See* Dkt. # 63 (Wittels Decl.) ¶ 17; Dkt. # 72-10 (Traverso Decl.)
21  Ex. S at 13. By December 2013, however, Plaintiffs' current attorney, Terrence
22  Traverso, entered the fray. *See* Dkt. # 59-9 (Ferguson Decl.) Ex. 9. In response, around
23  January 9, 2014, Defendant assigned another adjuster, Brian Carroll, to adjust Mrs.
24  Bridgham-Morrison's claim. *See* Dkt. # 60 (Carroll Decl.) ¶ 2; Dkt. # 72-10 (Traverso
25  Decl.) Ex. S at 13.

26        At that point, despite voluminous correspondence, Plaintiffs provided little
27  explanation for their continued demands for a higher settlement offer and no
28  ORDER – 3

documentation. *See* Dkt. # 59-10 (Ferguson Decl.) Ex. 10. At best, Plaintiffs' new correspondence finally introduces Mr. Morrison as a claimant (*id.* at 3) and alludes to increased economic damages, which Plaintiffs assume to be "fully documented" (*id.* at 25). Whatever the case, after over a year, the Parties had still noted resolved the claim and Plaintiffs filed suit. *See* Dkt. # 1.

### III.   LEGAL STANDARD

a. <u>Federal Rule of Civil Procedure 56 – Summary Judgment</u>

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

b. <u>Federal Rule of Civil Procedure 41(a) – Voluntary Dismissal</u>

Pursuant to Federal Rule of Civil Procedure 41(a)(2), a plaintiff may voluntarily dismiss his claims "only by court order, on terms that the court considers proper" unless the defendant has not yet filed an answer or motion for summary judgment or the parties have stipulated to dismissal. A "plaintiff may dismiss some or all of the defendants, or

ORDER – 4

some or all of his claims" pursuant to Rule 41(a). *See Wilson v. City of San Jose*, 111 F.3d 688, 692 (9th Cir. 1997) (citing *Concha v. London*, 62 F.3d 1493, 1506 (9th Cir. 1995); *Pedrina v. Chun*, 987 F.2d 608, 609-10 (9th Cir. 1993)); *but see Bailey v. Shell W. E & P, Inc.*, 609 F.3d 710, 719 (5th Cir. 2010) ("Rule 41(a) dismissal only applies to the dismissal of an entire action—not particular claims") (citing *Exxon Corp. v. Md. Cas. Co.*, 599 F.2d 659, 662 (5th Cir. 1979)).

"A district court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result." *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001) (citing *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 (9th Cir. 1987)). "Legal prejudice" in this regard "means 'prejudice to some legal interest, some legal claim, some legal argument.'" *Id.* (quoting *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996)). However, "[l]egal prejudice does not result merely because a defendant will be inconvenienced by potentially having to defend the action in a different forum or because the dispute will remain unresolved." *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1059 n.6 (9th Cir. 2011) (citing *Smith*, 263 F.3d at 976).

### IV. DISCUSSION

a. <u>Voluntary Dismissal</u>

The Court begins with Plaintiffs' requests to dismiss the majority of their claims. *See* Dkt. # 65 & 70. Following Defendant's Motion for Summary Judgment and tender of the UIM policy limits to the Plaintiffs, Plaintiffs no longer wish to assert their claims for breach of fiduciary duty, violations of the Washington Consumer Protection Act, negligence, and breach of contract. *See id.* Instead, the only claims they now assert are their claims for bad faith and violations of the Washington Insurance Fair Conduct Act ("IFCA"). *See id.* Defendant does not oppose dismissal, but requests an expedited summary judgment briefing schedule should Plaintiffs decide to reassert these claims. *See* Dkt. # 73.

ORDER – 5

Because of the apparent consensus between the Parties, the Court **GRANTS** Plaintiffs' request. Plaintiffs' sole remaining claims are for violations of the IFCA and for bad faith. However, the Court will not impose Defendant's requested expedited briefing schedule. The time for amending pleadings has long since passed. *See* Dkt. # 29 (setting December 9, 2015 deadline for amending pleadings). Good cause likely does not exist for amending the Scheduling Order or to permit Plaintiffs to reassert claims they have already voluntarily dismissed.

      b.  <u>Summary Judgment Motions for Plaintiffs' IFCA and Bad Faith Claims</u>

That brings the Court to the cross-motions for summary judgment on Plaintiffs' remaining claims for bad faith and violations of the IFCA.

"Bad faith handling of an insurance claim is a tort analyzed applying the same principles as other torts: duty, breach of that duty, proximate cause, and damages." *Aecon Bldgs., Inc. v. Zurich N. Am.*, 572 F. Supp. 2d 1227, 1234 (W.D. Wash. 2008) (citing *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003)). "Insurers have a duty to act in good faith separate from their contractual coverage obligations to their insureds." *Id.* (citing cases). Nevertheless, insurers do not have an "enhanced" obligation to give equal consideration to their insureds in the UIM context because they "often stand[] in the shoes of the tortfeasor" and therefore find themselves "in an adversarial relationship with [their] own insured." *Schreib v. Am. Family Mut. Ins. Co.*, Case No. C14–0165JLR, 2015 WL 5175708, at *3 (W.D. Wash. Sept. 3, 2015) (citing *Ellwein v. Hartford Accident & Indem. Co.*, 15 P.3d 640, 647 (Wash. 2001)).

"To establish the tort of bad faith in the insurance context, the insured must show that the insurer's actions were 'unreasonable, frivolous, or unfounded.'" *Dewitt Constr. Inc. v. Charter Oak Fire Ins. Co.*, 307 F.3d 1127, 1138 (9th Cir. 2002) (quoting *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998)). To do so, the insured bears the burden of presenting evidence that the insurer acted unreasonably. *Lakehurst Condominium Owners Ass'n v. State Farm Fire & Cas. Co.*, 486 F. Supp. 2d 1205, 1213

ORDER – 6

(W.D. Wash. 2007) (quoting *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277-78 (Wash. 2003)).  "Claims of bad faith 'are not easy to establish and an insured has a heavy burden to meet.'" *Bayley Constr. v. Great Am. E & S Ins. Co.*, 980 F. Supp. 2d 1281, 1290 (W.D. Wash. 2013) (quoting *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 329 (Wash. 2002)).

Ordinarily, "[w]hether an insurer acted in bad faith is a question of fact." *Bryant v. Country Life Ins. Co.*, 414 F. Supp. 2d 981, 997 (W.D. Wash. 2006) (quoting *Am. States Ins. Co. v. Symes of Silverdale, Inc.*, 78 P.3d 1266, 1270 (Wash. 2003)).  As such, an "insurer is entitled to summary judgment on a bad faith claim only if 'reasonable minds could not differ that its denial of coverage was based on reasonable grounds.'" *Id.* (quoting *Smith*, 78 P.3d at 1277).  "[T]he test is not whether the insurer's interpretation of the policy is correct but whether the insurer's conduct was reasonable." *Lakehurst*, 486 F. Supp. 2d at 1213 (citing *Wright v. Safeco Ins. Co.*, 109 P.3d 1, 10 (Wash. Ct. App. 2004)).

Finally, "[b]y its plain language, IFCA gives an insured no right to sue solely for a violation of a Washington insurance regulation. The right to sue arises solely from an unreasonable denial of a claim for coverage or payment of benefits. Regulatory violations matter only when deciding whether to award attorney fees or enhance damages." *Seaway Props., LLC v. Fireman's Fund Ins. Co.*, 16 F. Supp. 3d 1240, 1255 (W.D. Wash. 2014); *contra Langley v. GEICO Gen. Ins. Co.*, 89 F. Supp. 3d 1083, 1091 (E.D. Wash. 2015).[3] In other words, Plaintiffs must show an unreasonable denial of a claim to coverage to have a viable IFCA claim.  Of course, a violation of a provision in Washington Administrative Code ("WAC") 284-30-330 is evidence of bad faith.  *See Seaway*, 16 F. Supp. 3d at 1253 (citing *Overton*, 38 P.3d at 330).

---

[3] The law of the Western District of Washington is clear that violations of regulations enumerated in RCW 48.30.015(5) do not provide an independent cause of action under the IFCA.  *See Taladay v. Metro. Grp. Prop. & Cas. Ins. Co.,* No. C14-1290-JPD, 2016 WL 541398, at *4 n.8 (W.D. Wash. Feb. 11, 2016) (recognizing the split in authority between the Western and Eastern Districts of Washington).

ORDER – 7

Before continuing, it is not entirely clear that Defendant actually refused to pay benefits – Defendant indisputably offered to settle the claim twice and appeared to accept its liability under the policy. *See* Dkt. # 57-2 (Traverso Decl.) Ex. B at 2 (documenting original $17,000 offer); Dkt. # 63 (Wittels Decl.) ¶ 17 (indicating increased $20,000 offer). In fact, since these summary judgment motions have been filed, Defendant has actually paid the limits of the UIM policy after receiving further information from the Plaintiffs. *See* Dkt. # 62 (Magalski Decl.) ¶¶ 6-7. Courts have regularly held that where a "delay in payment is due to a dispute over the amount owed, the delay alone does not constitute a denial of payment under IFCA." *See Beasley v. State Farm Mut. Auto. Ins. Co.*, No. C13-1106RSL, 2014 WL 1494030, at *6 (W.D. Wash. Apr. 16, 2014) (citing *Country Preferred Ins. Co. v. Hurless*, No. C11-1349RSM, 2012 WL 2367073, at *4 (W.D. Wash. June 21, 2012)). That is particularly true where a defendant cannot assess the entirety of a plaintiff's claimed damages without additional information. *Id.* (citing *Morella v. Safeco Ins. Co. of Illinois*, No. C12-0672RSL, 2013 WL 1562032, at *3 (W.D. Wash. Apr. 12, 2013)). Moreover, "there is no authority for the notion that an insurer has a duty to inform any insured of what legal theories it might invoke to recover damages." *Tavakoli v. Allstate Prop. & Cas. Ins. Co.*, No. C11-1587RAJ, 2012 WL 6677766, at *5 (W.D. Wash. Dec. 21, 2012). However, an unreasonably low settlement offer may serve as a denial of benefits, though a good faith effort to appropriately value a loss will not. *See Langley*, 89 F. Supp. 3d at 1091-92 (E.D. Wash. 2015) (quoting *Morella*, 2013 WL 1562032 at *3).

Here, Plaintiffs failed to provide further documentation of their claimed damages for years. For example, until January 2016, Plaintiffs had not provided any information regarding Mrs. Bridgham-Morrison's wage loss extending beyond May 2012. *See* Dkt. # 59 (Ferguson Decl.) Ex. 6 at 14, Ex. 7 at 24, 39, 55. Likewise, Mr. Morrison's potential loss of consortium claim was not mentioned until January 17, 2014, well after the claims

ORDER – 8

had first been presented to Defendant.[4] *See id.* Ex. 10 at 2. Moreover, even while pressing demands for additional information (or perhaps a better settlement offer), Plaintiffs did not provide Defendant with any additional documentation to better evaluate their claim. *See id.* Ex. 10 at 2-24. At most, Plaintiffs' letters suggest that Mrs. Bridgham-Morrison had lost her job at some point and that her wage loss had ballooned to a higher number – however, they still provided no documentation. *See id.* at 25-26.

### i. Unreasonable Investigation

Whatever the case, Plaintiffs now contend that Defendant failed to reasonably investigate their claim because the Defendant allegedly did not include a litany of economic and noneconomic damages in its original review. *See* Dkt. # 56 at 16-17; Dkt. # 74 at 3-4. As such, Plaintiffs contend that Defendant violated WAC 284-30-330(4). The Court disagrees.

It is undisputed that the vast majority of the documentation Plaintiffs provided (and nearly all of the information) regarding Mrs. Bridgham-Morrison's damages came from two letters dated January 18, 2013 and July 22, 2013, respectively. *See* Dkt. # 63 (Wittels Decl.) Exs. 1-2. These letters included a police report, medical records and bills, an earning loss letter from Mrs. Bridgham-Morrison's employer, and a "Special Damage Statement" listing totaling her medical expenses and lost wages from November 2010 to May 2012. *See id.* They also provide a relatively sparse description of Mrs. Bridgham-Morrison's noneconomic injuries, such as her involvement in the community and outdoor activity, her frustration, and "the pain, suffering and loss of enjoyment of life" she has endured as a result of her injuries, even though she had "largely recovered" from them. *See id.* Ex. 1 at 11. Plaintiffs' later letters do not include much additional information, save for mentioning Mr. Morrison's loss of consortium claim and describing some of Mrs. Bridgham-Morrison's new wage loss claims. *See* Dkt. # 59 (Ferguson Decl.) Exs.

---

[4] In fact, Mr. Morrison had not even been mentioned as a potential claimant for the year preceding that letter. *See* Dkt. # 63 (Wittels Decl.) Exs. 1-2.

ORDER – 9

9-10. Defendant relied upon this information in valuing Mrs. Bridgham-Morrison's claim. *See* Dkt. # 57-4 (Traverso Decl.) Ex. D [Wittels Depo. Tr.] at 197:8-198:4 ("Q So your investigation – your investigation into change of lifestyle consisted of what you read in the medical records? A Medical records and Boyack's correspondence.").

As Defendant correctly notes, many of these damages claims were not presented until well after Defendant had already attempted to value the claim and made a settlement offer.[5]  For instance, Plaintiffs did not identify several categories of contractual damages – Mrs. Bridgham-Morrison's future shoulder MRIs and injections, travel mileage, or impaired earnings capacity – until January 2016, years into this litigation. *Compare* Dkt. # 59-6 (Ferguson Decl.) Ex. 6 at 14 *with* Dkt. # 59-7 (Ferguson Decl.) Ex. 7 at 10, 23-24, 38-39, 54-55.  Some, such as Plaintiffs' mortgage woes, were never mentioned during the claims evaluation period or in any of the Plaintiffs' communications with Defendant.  *See id.* Exs. 9-13; Dkt. # 63 (Wittels Decl.) Exs. 1-2, 4.  Indeed, Mr. Morrison (and his associated loss of consortium claim) was not even represented by Plaintiffs' first attorney.  *See* Dkt. # 59-4 (Ferguson Decl.) Ex. 4 [Boyack Depo. Tr.] at 7:13-17, 10:6-13.

Other issues that Plaintiffs claim were not investigated actually were investigated as they were included in the medical records presented to Defendant or were indisputably part of Mr. Wittels' initial evaluation.  For example, Plaintiffs claim that Defendant did not consider or investigate noneconomic damages associated with Mrs. Bridgham-Morrison's "Cervical sprains and strains, thoracic sprains and strains" and the like (Dkt. # 56 at 16-17), but those *were* specifically identified in the claim log (*see* Dkt. # 63 (Wittels Decl.) Ex. 3 at 21-23, Ex. 5 at 33-35).  And Mr. Wittels testified that he allocated

---

[5] Plaintiffs appear to argue that Defendant waived its right to argue that Plaintiffs delayed in responding to requests for additional information because it did not raise this as an affirmative defense.  *See* Dkt. # 71 at 6.  But Defendant does not raise these issues as an *affirmative defense*.  Instead, Defendant presents this evidence to show that Plaintiffs cannot show a crucial element of their claims – to show that Defendant's actions were unreasonable.  The Court finds that Defendant did not waive or forfeit its right to rely on this evidence.

ORDER – 10

noneconomic damages to individual procedures as part of his "damage model." *See* Dkt. # 57-4 (Traverso Decl.) Ex. D [Wittels Depo. Tr.] at 193:11-197:7, 208:3-23.

Essentially – and the way the Court reads Plaintiffs' claim – Plaintiffs argue that in order to have conducted a reasonable investigation, Defendant must have considered every possible avenue Plaintiffs could have recovered. *See* Dkt. # 56 at 7-10. That simply cannot be the case. Insurers must conduct reasonable and prompt investigations, but they need not necessarily investigate every discrete element. *See Lakehurst*, 486 F. Supp. 2d at 1214-15. The focus is not on what could have been done, but on what was actually done by the insurer. *See GCG Assocs. LP v. Am. Cas. Co. of Reading Pa.*, No. C07-792BHS, 2008 WL 3542620, at *10 (W.D. Wash. Aug. 8, 2008). And an insurer's initial investigation that does not identify every issue that contributed to the insured's claim does not show that investigation was unreasonable or insufficient. *Ayar v. Liberty Nw. Ins. Co.*, No. C10-1788-JCC, 2012 WL 3144886, at *6 (W.D. Wash. Aug. 1, 2012). Furthermore, there is simply no support for the proposition Plaintiffs advance that insurers must be cognizant of every potential element of damage a party may recover. *See* Dkt. # 74 at 4.

In fact, the investigation Defendant undertook in this case bears little difference to that held reasonable in *Anderson v. State Farm Mut. Ins. Co.*, 2 P.3d 1029, 1035-36 (Wash. Ct. App. 2000). In *Anderson*, the UIM insurer obtained the police report of the incident, took statements from witnesses, and reviewed the insured's medical bills before ultimately making a low settlement offer. *Id.* The court held that even though the insurer's "self-serving evaluation of the evidence at hand" led to the delay in payment, that alone did not render the investigation unreasonable. *Id.* at 1036.

Quite simply, Defendant conducted a reasonable investigation. Upon receipt of Mrs. Bridgham-Morrison's initial claim and information from Mr. Boyack in July 2013, Mr. Wittels drafted an initial report based on the records presented – a police report, medical records, medical records, and a letter from Mrs. Bridgham-Morrison's employer.

ORDER – 11

*See* Dkt. # 63 (Wittels Decl.) ¶¶ 3-5, Exs. 1-2. After doing so, Mr. Wittels requested additional information from Mr. Boyack to substantiate other portions of Mrs. Bridgham-Morrison's claim. *See id.* ¶ 6; Ex. 4. Based on this information, Mr. Wittels again evaluated Mrs. Bridgham-Morrison's claim. *See id.* ¶¶ 7-14. To the extent that Defendant (either at deposition or during its initial evaluation) may not have comprehended the universe of potentially recoverable damages without being informed by Plaintiffs or their attorneys, it is enough to say that "there is no authority for the notion that an insurer has a duty to inform any insured of what legal theories it might invoke to recover damages." *Tavakoli*, 2012 WL 6677766 at *5. That is particularly true "where an insured has his own attorney." *Id.* And insurers may at times rely upon an insured's own investigation where it is reasonable. *See Hiller v. Allstate Prop. & Cas. Ins. Co.,* No. 11-CV-0291-TOR, 2012 WL 2325603, at *11 (E.D. Wash. June 19, 2012).

Simply put, this is not a situation where the insurer unreasonably denied payment prior to *any* investigation while relying on mere suspicion or conjecture. *See e.g., McGee-Grant v. Am. Family Mut. Ins.,* No. C14-1989RSM, 2016 WL 126429, at *4 (W.D. Wash. Jan. 12, 2016) (finding bad faith investigation where insurer denied payment prior to reviewing medical records); *Scanlon v. Life Ins. Co. of N. Am.*, 670 F. Supp. 2d 1181, 1195-96 (W.D. Wash. 2009) (holding that insurer conducted a bad faith investigation where it denied the insured's claim by relying upon single doctor's two sentence memorandum, ignoring multiple medical professionals' conflicting conclusions, and failing to further investigate claim); *Aecon*, 572 F. Supp. 2d at 1236-38 (holding that investigations were not conducted in good faith where insurers did not conduct any investigation and made assumptions without a factual basis before denying claim). Rather, Defendant conducted an investigation that Plaintiffs contend missed some (unidentified at the time) portions of their claims. That alone does not render Defendant's investigation unreasonable.

ORDER – 12

One final point regarding Defendant's investigation merits mention. Plaintiffs contend that Defendant failed in its duty to investigate by lowering its initial damages evaluation in the range of $166,191 to $209,000 down to $131,252 to $153,252 without additional investigation. *See* Dkt. # 74 at 5-6. The Court rejects Plaintiffs' argument.

First, Defendant explains that this was done upon reevaluation of the same evidence. *See* Dkt. # 57-4 (Traverso Decl.) Ex. D [Wittels Depo. Tr.] at 256:23-25; Dkt. # 63 (Wittels Decl.) ¶¶ 12-13. Ultimately, Mr. Wittels revised his estimate based on his subjective evaluation of Mrs. Bridgham-Morrison's noneconomic damages. *See id.* at 260:1-261:16. At that juncture, Defendant had already completed its initial investigation and attempted to properly value the claim. That an uncommunicated initial subjective evaluation for noneconomic damages was revised downward is largely immaterial.

Second, Plaintiffs' own expert, Stephen Strezlec's, own logic reveals the reasonableness of the investigation.[6] In particular, Mr. Strezlec concludes that Defendant made a reasonable investigation or evaluation of Mrs. Bridgham-Morrison's claims. *See* Dkt. # 57-8 (Traverso Decl.) Ex. H at 24 ("The claim file shows that *an evaluation which appears reasonable* was completed on August 27, 2013"). How a reasonable evaluation could magically morph into an unreasonable investigation (all based on the exact same information and reasoning) is beyond the Court's understanding – the Defendant's method of *investigation* simply did not change.

In sum, the Court finds that no reasonable juror could find that Defendant conducted an unreasonable investigation into Plaintiffs' claims.

---

[6] In other respects, the Court largely discounts the value of Mr. Strezlec's opinions and finds that they do not raise a genuine issue of material fact. Mr. Strezlec's report is largely conclusory, doing little to explain how or why particular alleged problems were unreasonable. *See* Dkt. # 57-8 (Traverso Decl.) Ex. H. A court is not required to admit expert evidence "that is connected to existing data only by the *ipse dixit* of the expert." *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Mr. Strezlec's opinions largely fit the bill, doing no more to explain his opinions than his mere say-so.

ORDER – 13

>   ii. *Good Faith Attempt to Effectuate Prompt, Fair, and Equitable Settlement*

Next, Plaintiffs argue that Defendant violated WAC 284-30-330(6) by not attempting in good faith to effectuate a prompt fair, and equitable settlement of their claim. *See* Dkt. # 74 at 6. The Court disagrees.

As discussed, *supra*, Defendant conducted a reasonable investigation of Plaintiffs' claims. Thus, Plaintiffs' claim that Defendant violated this provision fails to the extent that it relies upon those same facts. In fact, it appears that Plaintiffs' arguments regarding the reasonableness of the Defendant's investigation were expressly rejected in *Beasley v. State Farm Mut. Auto. Ins. Co.*, No. C13-1106RSL, 2014 WL 1494030, at *4 (W.D. Wash. Apr. 16, 2014). There, like here, the insured argued that the insurer violated WAC 284-30-330(6) because it failed to consider certain elements of damages and that it did not provide a timely settlement offer even though the insured did not provide full medical records and information until well into the process. *See id.* The court granted summary judgment in favor of the insurer and rejected both arguments. Specifically, given the delay in obtaining the records from the insured, the court found that the insurer did not have adequate information to value the claim and reasonably delayed in making an offer. *See id.* Furthermore, like here, the court found that the categories of damages allegedly not included in the insurer's initial evaluation actually were wrapped up in other considerations. *Id.* at *5. As such, the court found that no violation occurred.

Alternatively, Plaintiffs argue that Defendant violated this provision by not offering any amounts for Mr. Morrison's loss of consortium claim. *See* Dkt. # 74 at 7. This argument is meritless. For one, as a matter of law, an insurer does not commit bad faith or breach its statutory duties "by not disclosing the possibility of a loss of consortium claim to" a party represented by an attorney. *See Tavakoli*, 2012 WL 6677766 at *6. Indeed, an insurer does not commit bad faith where it does not include a loss of consortium claim where the insured does not disclose the claimant until after a settlement offer is made. *Id.* That is plainly what happened here, where Plaintiffs'

ORDER – 14

attorneys did not disclose Mr. Morrison's claim until well after Defendant made its settlement offers. *See* Dkt. # 57-2 (Traverso Decl.) Ex. B at 2 ($17,000 settlement offer made on October 31, 2013); Dkt. # 59 (Ferguson Decl.) Ex. 4 [Boyack Depo. Tr.] at 7:13-17, 10:6-13 (Mr. Boyack did not represent Mr. Morrison at any point), Ex. 10 at 2 (Mr. Morrison first disclosed as a claimant on January 27, 2014), 3 (requesting basis for valuing Mr. Morrison's loss of consortium claim).

Finally, Plaintiffs argue that Defendant violated this provision by not paying out its $20,000 settlement offer despite Plaintiffs' voluminous demands for such allegedly "undisputed" amounts. *See* Dkt. # 74 at 7. The Court disagrees. For one, Plaintiffs do not provide any support for their position. They cite to no case authority and the cited portions of Mr. Strzelec's report do not stand for the proposition that insurers must pay settlement offers they have made where no settlement has been reached. *See* Dkt. # 57-8 (Traverso Decl.) Ex. H at 23, 40. On the other hand, one case does stand for the proposition that undisputed damages may give rise to an insurer's duty to make partial payments in certain circumstances. *See Tavakoli*, 2012 WL 6677766 at *6-7. However, *Tavakoli* is easily distinguishable because there was evidence that the insurer's representatives had actually agreed that the insurer owed the insured certain expenses. *See id.* at *6 n.5. Plaintiffs have not presented any such evidence here. Simply put, the Parties never reached any agreement as to any valuation of Plaintiffs' claim, meaning there were no "undisputed" amounts.

### iii. Whether Defendant Offered Substantially Less than Amounts Ultimately Recovered

Next, Plaintiffs argue that Defendant violated WAC 284-30-330(7) because its final settlement offer of $20,000 is substantially less than the $100,000 policy limit Defendant recently paid. The Court disagrees.

Simply put, Washington courts have rejected the "strict number comparison approach" Plaintiffs appear to present. *See Am. Mfrs. Mut. Ins. Co. v. Osborn*, 17 P.3d

ORDER – 15

1229, 1236 (Wash. Ct. App. 2001) (quoting *Keller v. Allstate Ins. Co.*, 915 P.2d 1140, 1145 (Wash. Ct. App. 1996)). Instead, the focus is on the circumstances and reasoning underlying of the offer. *See Keller*, 915 P.2d at 1145.

But Plaintiffs offer nothing more than a strict comparison between Defendant's final $20,000 offer and the $100,000 policy limit that Defendant ultimately paid out. *See* Dkt. # 56 at 20; Dkt. # 74 at 15. That is not enough under Washington law. What matters is whether "the lower offer was reasonable in light of evidence available at the time the offer was made." *See Lloyd v. Allstate Ins. Co.*, 275 P.3d 323, 327 (Wash. Ct. App. 2012) (citing *Keller*, 915 P.2d at 1145). And Plaintiffs do not offer any evidence or argument that the amount of the first offer was unreasonable.

### *iv. Whether Defendant Misrepresented Pertinent Facts*

Finally, Plaintiffs contend that Defendant violated WAC 284-30-330(1)[7] by misrepresenting its concerns about the causation of Mrs. Bridgham-Morrison's shoulder injury. *See* Dkt. # 56 at 20. Plaintiffs contend that Mr. Wittels actually testified that he did not have this concern while evaluating Mrs. Bridgham-Morrison's claim (without citing to the relevant portion of Mr. Wittels' deposition).

The Court finds that no misrepresentation actually occurred. Even if Mr. Wittels did not hold that concern, he was specifically advised about that concern by his supervisor. *See* Dkt. # 57 (Traverso Decl.) Ex. B at 3 (entry in claim file showing concern about causation of injury given that all medical records related to the specific motor vehicle accident); Ex. D [Wittels Depo. Tr.] at 263:8-20. In other words, Defendant actually appeared to actually hold this belief, meaning that Mr. Wittels did not misrepresent any pertinent fact.

---

[7] WAC 284-30-330(1) deems an insurer's "[m]isrepresent[ation] of pertinent facts or insurance policy provisions" to be an unfair business practice.

ORDER – 16

### *v. Conclusion*

In sum, the Court finds that no reasonable juror could find that Defendant acted unreasonably and in bad faith in its conduct with the Plaintiffs.  The entirety of Plaintiffs' bad faith and IFCA claims rest upon allegations of Defendant's alleged violations of various WAC provisions.  However, as set forth above, the Court finds that no reasonable juror could find that Defendant violated any of those provisions.  To the contrary, the undisputed evidence shows that the Parties simply engaged in an ongoing valuation dispute that was not resolved until late in this litigation.  Plaintiffs may fault Defendant for various shortcomings in its conduct, but Defendant was only obligated to reasonably investigate, value, and deal with Plaintiffs (and their attorneys).  Defendant did so as a matter of law.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motions for Voluntary Dismissal (Dkt. # 65 & 70), **GRANTS** Defendant's Motion for Summary Judgment (Dkt. # 58), and **DENIES** Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 56).

The Court dismisses Plaintiffs' claims for breach of contract, breach of fiduciary duty, negligence, and for violations of the Washington Consumer Protection Act without prejudice.  The Court grants summary judgment in favor of Defendant and against Plaintiffs on Plaintiffs' bad faith and IFCA claims.

DATED this 11th day of May, 2016.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 17